UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 2:24-cr-00090-LEW |
| ) | |
| JUSTIN NEVES, ) | |
| SHEILA T-SREY ) | |
| ) | |
| Defendants ) | |

### ORDER ON DEFENDANT NEVES' MOTION FOR A *FRANKS* HEARING

Defendants Justin Neves and Sheila T-Srey were indicted on one count of conspiracy to distribute cocaine and cocaine base (ECF No. 1). The indictment was based, in part, on evidence obtained by searching three cellphones found in T-Srey's residence during a U.S. Probation search. At the time of the probation search, T-Srey was not on supervised release; Neves was. Neves and T-Srey share childcare responsibilities and Neves frequently uses T-Srey's residence. Pursuant to a special condition of Neves supervised release, U.S. Probation and the FBI searched T-Srey's residence and recovered the phones. The FBI later searched the phones pursuant to a warrant. Neves challenges the search of T-Srey's residence, seizure and search of the phones, and the FBI's search warrant in a Motion to Suppress and Motion for *Franks* Hearing (ECF No. 43). For the following reasons, Neves' motion for a *Franks* hearing is DENIED. A ruling on the Motion to Suppress is RESERVED pending a suppression hearing.

## BACKGROUND

This background is drawn from Neves' Motion, the Government's Response in Opposition (ECF No. 58), and Neve's Reply (ECF No. 68). Although this Order concerns only Neves' motion for a *Franks* hearing, the Probation search, seizure of the cell phones, and warrant, Neves challenges are the result of his criminal history and investigations into persons and crimes not charged here. For that, a lengthier introduction is warranted.

In 2019, Neves was convicted of conspiracy to violate federal firearms law. His sentence included supervised release which was revoked in 2023. His sentence for revocation also included a term of supervision overseen by Officer Kate Phillips of the U.S. Probation and Pretrial Services. Officer Phillips began investigating Neves' activities when a drive-by shooting in Saco Maine occurred on February 9, 2024. Individuals in a Honda HRV shot at another vehicle, persons in that vehicle shot back, and the HRV crashed. Joshua Estrada (a/k/a "Mac") and Yancarlos Abrante (a/k/a "Glizzy") now face criminal charges for the shooting in a separate federal proceeding. As part of its investigation, the FBI searched phones recovered in the HRV. One phone had what the Government claims are messages between Abrante and Neves[1] on February 4, 2024. Abrante wrote, "I banged my gun recently yu better believe it" and "Yu never tagged an opp." Neves responded, "I'm up one don't make it 2." FBI Task Force Officer ("TFO") Jonathan Duquette reviewed the messages and understood "tag" to mean murder and "opp" to mean rival gang member. TFO Duquette concluded that Neves meant he had murdered

---

[1] The messages were sent via Snapchat between users "glizzy_ftz" and "reallyright7414" with respective usernames "600% Glizzy" and "J Sav."

a rival gang member and was threatening Abrante. Neves also wrote, "Ik I'll do time for a gun . . . Happily," leading TFO Duquette to believe Neves had possession or access to a gun despite being a prohibited possessor. In April 2024, a cooperating defendant in the drive-by shooting case told the Government that Neves, Abrante, and Estrada were members of the Gangster Disciples who sold drugs together in Maine.

For T-Srey's part, the FBI publicized video footage of her black Honda Pilot near the drive-by shooting. T-Srey told investigators she had picked up the shooters and drove them away at their request. The FBI informed Officer Phillips of T-Srey's involvement. Officer Phillips questioned Neves about the drive-by shooting and he denied any involvement. Nonetheless, Officer Phillips petitioned for, and was granted, a modification of Neves supervised release conditions to include a 90-day curfew enforced via electronic monitoring. From 9:00 p.m. to 6:00 a.m., Neves was required to be in a sober living home. From the electronic monitoring, Officer Phillips determined Neves spent most of his time outside of his curfew hours at T-Srey's residence.

During Neves' 90-day curfew, an anonymous informant ("SOI-1") told a detective that Neves had a Glock pistol. SOI-1 reported he or she used to purchase drugs from Neves, knew Neves by the name "Savage," and currently owed Neves $100.00. SOI-1 explained that Neves drove up quickly and swung the car door open holding the gun, causing SOI-1 to flee into a building. SOI-1 identified Neves from a photograph during the interview. SOI-1 also identified Abrante and Estrada from photographs. However, the police report also notes that during the interview SOI-1 misidentified a different individual as Estrada, was a recovering addict, and had been convicted for crimes of dishonesty multiple times.

The FBI asked Officer Phillips if she could verify SOI-1's story via Neves electronic monitoring geolocation data. That data corroborated SOI-1's story.

Shortly after SOI-1's report, Neves was subject to a traffic stop while driving a black Chrysler sedan. During the stop, the police officer conducting the stop called Officer Phillips because the officer had found $580.00 on Neves. As Neves was unemployed, Officer Phillips thought Neves holding that much cash was suspicious. She did not however delegate authority to conduct a bail search. Neves later told Officer Phillips the money was from T-Srey's tax return.

The day after Neves' traffic stop a second anonymous informant ("SOI-2") was arrested and interviewed on drug charges. SOI-2 owned the car Neves was driving while stopped. SOI-2 told the interviewing detective he or she had lent the car to "Brandon." SOI-2 described Brandon as wearing a big ankle bracelet and living in both a sober house and the housing development where T-Srey lived. SOI-2 further said Brandon exchanged 3-8 grams of cocaine to use the car, that Brandon showed up with his girlfriend (the mother of his three children), and that Brandon had a large amount of cash on him. SOI-2 gave a phone number for Brandon to the detective which was the same phone number Officer Phillips had for Neves. After receiving the police report for SOI-2, Officer Phillips used Neves' electronic monitoring geolocation data to determine that Neves had been at SOI-2's house when SOI-2 recalled loaning him the car.

Thus, we arrive at the disputed search of T-Srey's house performed on March 28, 2024, by U.S. Probation and the FBI. Based on SOI-1's reported altercation with Neves, Neves' $580.00 traffic stop, SOI-2's reported car-for-cocaine exchange with Neves, and

the text messages between Neves and Abrante, Officer Phillips believed she had authority to conduct the search pursuant to Neves' conditions of supervised release. Relevant here are special conditions 3 and 4. Special condition 3 gave Officer Phillips authority to perform a search "of the defendant and of anything the defendant owns, uses, or possesses if the officer reasonably suspects that the defendant has violated a condition of supervised release and reasonably suspects that evidence of the violation will be found in the areas to be searched." Special condition 4 prohibits Neves from owning or possessing a gun or to "knowingly be at any time in the company of anyone known by him to possess a firearm or dangerous weapon."

Both Neves and T-Srey were present at the search. During the search, Officer Phillips asked T-Srey if there were any guns in the house. T-Srey said there was a gun in a safe and provided the safe code. Officers found a 9mm handgun and ammunition, as well as a magazine for a Glock in the safe. The 9mm was registered to T-Srey and Neves denied it was his and denied being able to access the safe. T-Srey explained the Glock magazine as something she had found in the house and put into the safe without knowing its origins. Police also found $1,560.00 in cash and three cellphones. Neves refused to provide access to the phones. The FBI obtained a warrant to search the phones and the resulting search led to Neves' and T-Srey's indictment.

## ANALYSIS

### A.  THE FBI'S SEARCH WARRANT AND SUPPORTING AFFIDAVIT

Search warrants are governed by the Fourth Amendment, which provides that "no Warrants shall issue, but upon probable cause supported by Oath or affirmation." U.S.

5

CONST. amend. IV. For search warrants, the probable cause requirement is twofold: there must be probable cause to believe a crime has been committed (the "commission element") and that enumerated evidence of the crime will be found at the place searched (the "nexus element"). *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015) (internal quotations omitted). Probable cause exists where "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The fair probability standard "is less than a more-likely-than not standard." *United States v. Gonzales*, 113 F.4th 140, 148 (1st Cir. 2024) (citing *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999)). The probable cause standard "demands only the kind of probability on which reasonable and prudent people, not legal technicians, act." *United States v. Adams*, 791 F.3d 22, 32 (1st Cir. 2020) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)) (cleaned up).

Neves requests an evidentiary hearing to assess the truthfulness of the affidavit in support of a search warrant pursuant to *Franks v. Delaware*, 438 U.S. 154, 156 (1978). Neves launches several challenges to the FBI's warrant. Much of Neves' argument attacks the sufficiency of the warrant and the reliability of SOI-1 and SOI-2. Neves believes he has met his burden for the Court to conduct a *Franks* hearing because the supporting affidavit contained "material misrepresentations and omissions in reckless disregard for the truth with respect to the confidential sources [and] never explained the lack of independent basis of knowledge for any of the allegations." Mot. at 17.

The affidavit in question was written by TFO Duquette. It states: "Based on information from two different law enforcement agencies that Neves was in possession of

6

a firearm, cash, and cocaine, U.S. Probation decided to conduct a probation search of Neves, his cellphone, his sober living home, and his girlfriend's apartment." Duquette Aff. (ECF No. 56-5) at 10. Under the heading "Probable Cause" the affidavit also details:

> The Snapchat conversations between "600% Glizzy" (Abrante) and "J Sav" (Neves) and TFO Duquette's interpretation thereof;
>
> A jail call made between murder suspect Lorenze Labonte and a man he called "J" where J spoke of beating up Glizzy (Abrante) and Mac (Estrada) the next time he saw them;
>
> Neves' prior criminal history and that he was "quickly ruled out" as a suspect in the drive-by shooting;
>
> The search of T-Srey's residence and seizure of the cellphones as well as a Cash App card for Neves personalized with "$BosJSav7414";
>
> Information linking the CashApp account for "JSav" to Neves' known cellphone number and identifying Neves as "J Sav" on Snapchat;
>
> TFO Duquette's belief, based on experience, that multiple cell phones signal illegal activity; and
>
> Neves' tattoos that associated him with the Gangster Disciples.

*Id.* ¶¶ 4–18. TFO Duquette's affidavit also attached and incorporated two warrant affidavits from the investigation into the Saco drive-by shooting that detailed Abrante's and Estrada's alleged criminal activity. TFO Duquette's affidavit sought records from the phones that "relate to violations" of drug trafficking and firearm laws involving Neves, Estrada, and Abrante.

### B.   *FRANKS'* STANDARD

At the outset, I note "[a] *Franks* hearing . . . is primarily a vehicle for challenging a warrant by impeaching the affiant." *United States v. Adams*, 305 F.3d 30, 36 n.3 (1st Cir. 2002). Likewise, a *Franks* hearing is not for testing informants' credibility but the

truthfulness and caution of the affiant. *United States v. Manning*, 79 F.3d 212, 220 n.7 (1st Cir. 1996); *see also Franks*, 438 U.S. at 171. Neves' Motion to Suppress and for a *Franks* Hearing advances several arguments on the warrant's validity, but I limit my analysis to his narrower argument that TFO Duquette's affidavit contained material omissions and misrepresentations so I may resolve his request for a *Franks* hearing.

Affidavits in support of search warrants are presumptively valid. *Franks v. Delaware*, 438 U.S. 154, 171 (1978). A defendant may seek a *Franks* hearing to attack the truthfulness of a supporting affidavit. *Id.* at 156. The bar to mandating a *Franks* hearing is intentionally high. Neves is only entitled to a *Franks* hearing "if he can make a substantial showing that (1) the affiant intentionally or with reckless disregard for the truth included a false statement in the affidavit, or omitted information from the affidavit; and (2) such false statement or omitted information was material to the probable cause inquiry." *United States v. Austin*, 991 F.3d 51, 57 (1st Cir. 2021). Reckless disregard for the truth entails a showing that the affiant "'entertained serious doubts as to the truth' of the allegations." *United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (quoting *United States v. Williams*, 737 F.2d 594 (602) (7th Cir. 1984)). "Recklessness may be inferred 'from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *Id.* (quoting *Williams*, 737 F.2d at 602).

First, Neves claims unpersuasively that TFO Duquette "did not state with any specifics what crime he believed occurred and any corroboration information." Mot. at 13. A review of the warrant request flatly undermines this argument. TFO Duquette cited 21 U.S.C. §§ 841, 186 (drug trafficking and conspiracy offenses) and 18 U.S.C. § 924(c)

8

(firearms offenses) when describing the information sought from the cellphones. Duquette Aff. at 20. The warrant also provided a Snapchat discussion between Neves and Abrante where the topic of discussion was guns. One of the incorporated warrant affidavits for the Saco shooting investigation buttresses that "a gold-colored digital scale coated in white-powdery residue, consistent with residue left from weighing out and/or mixing controlled substances for further distribution" was recovered from the Honda HRV involved in the drive-by. *Id.* at 39. The same attached affidavit states that New Bedford Police believed Estrada and Abrante were trafficking drugs and were verified members of the Gangster Disciples. *Id.* at 42. As such, I cannot find that this alleged omission even occurred, much less evaluate whether it warrants a *Franks* hearing. Even if Neves were able to make manifest that which does not exist, it would not alter my conclusion for the reasons that follow.

Neves argues TFO Duquette "specifically omitted concerns as to the veracity of one of the informants." Mot. at 13. Although Neves offers no argumentation to drag this assertion across the goal line, his skepticism is presumably based on SOI-1's addiction struggles and prior convictions for crimes of dishonesty. Neves further states the affidavit "contained material misrepresentations and omissions in reckless disregard for the truth with respect to confidential sources, never explained the lack of independent basis of knowledge for any of the allegations, and ignored . . . the outcome of the probation search." Mot. at 17. The Government contends that the affidavit had "a succinct summary of the two corroborated tips" by SOI-1 and SOI-2. Resp. at 19 (ECF No. 56). The affidavit's

9

"Probable Cause" section makes no reference to SOI-1 or SOI-2,[2] but instead attributes the information to "two different law enforcement agencies." Duquette Aff. at 8.

Neves has not met his burden of showing an intentional or reckless omission. Notwithstanding SOI-1's criminal record, the information provided was corroborated by Officer Phillips via Neves electronic monitoring location data, as was SOI-2's report. In this context it is a strain to conclude that TFO Duquette's summary was done intentionally to obtain probable cause or that TFO Duquette seriously doubted the content of his affidavit in reckless disregard for the truth. But even if Neves has met this burden, his motion for a *Franks* hearing still readily fails on the probable cause prong of the analysis.

In analyzing a request for a Franks hearing in which the Defendant alleges the search warrant affidavit omitted material facts, the inquiry is whether the inclusion of the omitted information would have led to a magistrate judge finding that the search warrant application was not supported by probable cause. *United States v. Rigaud*, 684 F.3d 169, 173 n.5 (1st Cir. 2012). Where the defendant instead alleges that the affidavit contained material misrepresentations, the inquiry is whether inclusion of one or more misrepresentations was necessary for probable cause to exist. *Id*. Here, Neves alleges both misrepresentations and omissions surrounding the reliability of confidential sources and an omission of the independent basis for any of the allegations.

---

[2] Neves argues at length on affidavit requirements for basing probable cause on an informant's tip. However, as discussed *infra*, TFO Duquette's affidavit supports probable cause notwithstanding SOI-1's or SOI-2's tips. As such there is no need for me to address these arguments in assessing whether a *Franks* hearing is required.

10

With respect to SOI-1, a hypothetical "revised" affidavit would include a statement that the belief Neves had a gun came from SOI-1's report and SOI-1's criminal and drug history. Even assuming SOI-1's criminal history renders him or her completely unreliable; the affidavit would still support a finding of a fair probability that a crime was committed and the phones would contain evidence of that crime. Neves' Snapchat exchange with Abrante indicated Neves had a gun, the attached warrant detailed Abrante and Estrada's potential drug-related crimes, and the affidavit lays out a plausible gang connection between Abrante, Estrada, and Neves. This clears the relatively low bar of probable cause. Although Neves argues that there was no "reasonable basis to search [Neves'] cell phones to show further criminal involvement with possession of a firearm," Def.'s Mot. at 13, as shown by the Snapchat messages, there was a fair probability the phones could contain evidence of his possession of a firearm and/or knowledge that he was residing with someone who possessed a firearm (in violation of his supervised release), as well as messages bearing on Abrante's and Estrada's involvement in criminal activity.

As for Neves' claim that the affidavit ignored the outcome of the U.S. Probation search, a review of the affidavit shows that TFO Duquette detailed the search, the items seized, and Neves' and T-Srey's exculpatory statements with respect to the 9mm gun and Glock magazine. *See* Duquette Aff. at 8-9. With or without this statement, the affidavit still contains a sufficient basis to find probable cause. For the same reasons, Neves' assertion that the affidavit lacked an independent basis of knowledge for the accusation fails.

## CONCLUSION

Because Defendant Neves has failed to show he is entitled to a *Franks* hearing, his Motion to Suppress and Motion for a *Franks* Hearing (ECF No. 43) is RESERVED IN PART and DENIED in PART.

SO ORDERED.

Dated this 16th day of January, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge
